**UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD**

DOUGLAS A. ALARID,
           Appellant,

        v.

DEPARTMENT OF THE ARMY,
           Agency.

DOCKET NUMBER
SF-0752-14-0256-B-2

DATE: March 13, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Paul E. Carreras, Santa Rosa, California, for the appellant.

Bernard Lee Gotmer, Fort Hunter Liggett, California, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member[2]

**FINAL ORDER**

¶1       The appellant has filed a petition for review of the remand initial decision that sustained his removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

[2] Member Leavitt's name is included in decisions on which the three-member Board completed the voting process prior to his March 1, 2023 departure.

material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the remand initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

The appellant served as a Police Officer with the agency's Camp Parks Reserve Forces Training Area Police Department. *Alarid v. Department of the Army*, MSPB Docket No. SF-0752-14-0256-I-1, Initial Appeal File (IAF), Tab 5 at 18. On October 4, 2013, the agency proposed the appellant's removal based on the following charges: (1) conspiracy to purchase and distribute an unauthorized Federal police badge; and (2) the manufacture and distribution of an unauthorized Federal police identification card. *Id.* at 38-43. The appellant provided a written reply to the proposed removal, and on December 13, 2013, the agency issued a decision sustaining the charges and removing the appellant, effective on the same date. *Id.* at 18, 20-29, 31-36.

The appellant timely filed an initial appeal with the Board, and following a hearing, the administrative judge issued an initial decision sustaining the agency's charges and finding that the appellant failed to prove that his removal was the result of reprisal for equal employment opportunity (EEO) activity, that the appellant's misconduct had an adverse effect on the efficiency of the service,

and that the penalty of removal was reasonable. IAF, Tab 41, Initial Decision. The appellant petitioned the Board for review of the initial decision, and in an August 21, 2015 Opinion and Order, the Board held that the administrative judge did not notify the appellant of the relevant burdens to prove his affirmative defenses, did not consider his affirmative defense of reprisal for participation in union activity under 5 U.S.C. § 2302(b)(9)(B), and did not address the appellant's other claims of reprisal for whistleblowing and due process violations. *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶¶ 7-17 (2015). The Board vacated the initial decision and remanded the appeal for the administrative judge to further adjudicate the appellant's affirmative defenses. *Id.*, ¶¶ 1, 18.

¶4        On remand, the administrative judge notified the appellant of the relevant burdens for the affirmative defenses, considered additional evidence and argument from the parties regarding the appellant's affirmative defenses, and issued a remand initial decision finding that the appellant had not proven his affirmative defenses of due process violations and reprisal for participation in union activity and whistleblowing. *Alarid v. Department of the Army*, MSPB Docket No. SF-0752-14-0256-B-2, Refiled Remand File (RRF), Tab 3, Tab 5, Remand Initial Decision (RID) at 13-25. The administrative judge also adopted his findings from the initial decision that the agency proved its charges, there was a nexus between the appellant's misconduct and the efficiency of the service, and the penalty of removal was reasonable. RID at 2-12, 25-26.

¶5        The appellant has filed a petition for review of the remand initial decision in which he argues that the deciding official perjured himself during the hearings held in this matter; the agency did not prove by clear and convincing evidence that it would have taken the removal action in the absence of his protected union activity; the agency did not prove its charges, that a nexus existed between the misconduct and the efficiency of the service, and that the penalty of removal was reasonable; and the administrative judge slept through portions of the second hearing held in this case. *Alarid v. Department of the Army*, MSPB Docket

No. SF-0752-14-0256-B-2, Remand Petition for Review (RPFR) File, Tab 3. The agency has filed a response opposing the petition for review, to which the appellant has filed a reply. RPFR File, Tabs 5-6. As set forth below, the administrative judge properly found that the agency proved its charges by preponderant evidence, and the appellant has not shown that the administrative judge erred in finding the deciding official's testimony credible or that the administrative judge was asleep during the second hearing. We also find that the appellant has not shown error in the administrative judge's rulings that the agency established by clear and convincing evidence that it would have removed the appellant absent his protected union activity, that the appellant did not show that his protected disclosures were a contributing factor in the removal, and that the agency proved a nexus between the misconduct and the efficiency of the service and that the penalty of removal was reasonable.

## DISCUSSION OF ARGUMENTS ON REVIEW

The administrative judge properly found that the agency proved its charges.

¶6    On review, the appellant does not challenge the administrative judge's finding that the agency proved its charges other than to generally dispute the administrative judge's finding that the agency's evidence was strong and clear in support of its removal action. RPFR File, Tab 3 at 15; RID at 2-12. The appellant also alleges that the deciding official committed perjury during the hearings held in this matter, which "calls [his] credibility into serious question, including his decision to remove Appellant." RPFR File, Tab 3 at 15. We address these arguments below.

¶7    The administrative judge found that the agency proved its charge of the manufacture and distribution of an unauthorized Federal police identification card by preponderant evidence. RID at 4-10. Specifically, the administrative judge found that the appellant admitted to making at least two Federal police identification cards on the agency's identification card machine and providing

them to a former employee, the first of which was made pursuant to a settlement agreement, but that a subsequent identification card was not authorized by the agency because it contained language not authorized by the settlement agreement or the chief of police, and the appellant's explanation as to why the language was authorized was not credible based on the testimony and documentary evidence presented. *Id.* The administrative judge also found that the appellant's actions violated 18 U.S.C. § 701, which prohibits the manufacture, sale, or possession of any "badge, identification card, or other insignia, of the design prescribed by the head of any department or agency of the United States for use by any officer or employee thereof, or any colorable imitation thereof . . . except as authorized under regulations made pursuant to law[.]" RID at 9-10.

¶8          The administrative judge then found that the agency proved its charge of conspiracy to purchase and distribute an unauthorized Federal police badge. RID at 10-12. Specifically, the administrative judge found that the appellant did not deny working with the former employee to order and pay for a police badge for the former employee, which involved the appellant contacting a vendor that produces police badges and discussing the badge design with the vendor. *Id.* The administrative judge concluded that the appellant's claim that the badge was authorized was not credible because the settlement agreement did not authorize such a badge, each of the officers who possessed such a badge testified that, to obtain one, they had to get a letter of authorization from the former Camp Parks chief of police, and the vendor's sales representative testified that she thought the badge was for current police officers and would not have sold it to the appellant and the former employee if she had known he was no longer employed. RID at 11-12. Thus, the administrative judge found that the appellant acted in concert with the former employee to obtain an unauthorized police badge, which violated 18 U.S.C. § 371, which prohibits two or more persons from conspiring to commit an offense against the United States and effecting the object of the conspiracy, and concluded that the agency had proved its second charge by preponderant

evidence. RID at 12. The appellant does not dispute these findings, and we discern no reason to disturb the administrative judge's findings, as the record reflects that the administrative judge considered the evidence as a whole, drew appropriate inferences from the evidence, and made reasoned conclusions on the issue of credibility. RID at 2-12; *see Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987).

The appellant has not shown that the administrative judge erred in finding the deciding official's testimony credible.

¶9    We next address the appellant's claim that the administrative judge was asleep during portions of the second hearing held in this matter, as our finding as to this issue bears upon whether the administrative judge properly assessed the evidence as to whether the deciding official committed perjury. On review, the appellant submits an affidavit, and affidavits from his girlfriend and one of his witnesses, stating that they observed the administrative judge sleeping during the second hearing. RPFR File, Tab 3 at 25-31. The appellant did not raise the administrative judge's alleged inattentiveness at any point during the proceedings below or in his written closing argument. His failure to object below precludes him from pursuing this argument on review. *See Watson v. Department of the Treasury*, 49 M.S.P.R. 237, 242 (1991) (finding that the appellant's representative's failure to object to the length of the hearing sessions and presentation of oral closing arguments precluded him from pursuing the arguments on review).

¶10    Moreover, the record does not support the appellant's claim that the administrative judge was asleep during testimony. The appellant contends that the administrative judge was asleep during the testimony of the proposing official, particularly a portion of his testimony in which he testified about "taking a telephone call from" the former Camp Parks chief of police to the deciding official, which the administrative judge later stated that he did not hear. RPFR

File, Tab 3 at 21-27. There is no such testimony from the proposing official in the record. The proposing official did testify that he "believe[d]" the former Camp Parks chief of police had briefed the deciding official, which led to an internal investigation of the appellant's misconduct. *Alarid v. Department of the Army*, MSPB Docket No. SF-0752-14-0256-B-1, Remand File (RF), Hearing Transcript (HT) at 113 (testimony of the proposing official). But, the administrative judge asked the question that elicited this testimony from the proposing official and asked a follow-up question immediately after the proposing official responded. HT at 113-14 (testimony of the proposing official). Thus, contrary to the appellant's assertions, the administrative judge was not asleep during this testimony. Likewise, the appellant's claim that the administrative judge was asleep during the testimony of two other witnesses is not sufficiently specific to warrant further discussion. RPFR File, Tab 3 at 21-24.

¶11 We also have reviewed the evidence that the appellant claims demonstrates that the deciding official perjured himself during the course of the two hearings in this case and find no basis on which to disturb the administrative judge's findings.[3] The appellant contends that the deciding official's denial of interacting with the former Camp Parks chief of police calls into question the credibility of the deciding official's denial of any anti-union bias in his decision to sustain the removal. RPFR File, Tab 3 at 9-10. The administrative judge analyzed whether the appellant's participation in union activity was a contributing factor in the removal and whether there was evidence that there was motive to retaliate against the appellant for his union activity. To that end, the administrative judge made findings as to the plausibility of witness testimony that the deciding official had

---

[3] Although the appellant and the administrative judge characterize the allegedly perjured testimony as depriving the appellant of due process, the appellant offered the evidence of perjury to impeach the credibility of the deciding official. *See Deleson v. Department of the Interior*, 88 M.S.P.R. 121, ¶ 6 (2001) (finding that the appellant's evidence that agency witnesses had perjured themselves was submitted to impeach the credibility of the witnesses).

communicated with the former Camp Parks chief of police. The administrative judge concluded that, although the deciding official was aware of the appellant's union activity because the appellant had informed him of such activity, there was no evidence that the deciding official was influenced by the former chief of police. RID at 17-21. The Board defers to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Although the Board may decline to defer to an administrative judge's credibility findings that are abbreviated, based on improper considerations, or unsupported by the record, *Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 13 (2001), it may not overturn an administrative judge's demeanor-based credibility findings merely because it disagrees with those findings, *Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1372 (Fed. Cir. 2016) (quoting *Haebe*, 288 F.3d at 1299). Here, the administrative judge did not discuss all of the evidence regarding whether the deciding official and former Camp Parks chief of police communicated. However, his failure to mention all of the evidence of record does not mean that he did not consider it in reaching his decision. *Marques v. Department of Health and Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table).

¶12      Moreover, our review of the record does not support a finding that the administrative judge erred in finding that the deciding official's testimony was credible. The deciding official testified consistently during the proceedings that he had not talked to or met the former Camp Parks chief of police. IAF, Hearing Compact Disc (HCD) (testimony of the deciding official); HT at 116, 125-26 (testimony of the deciding official). As set forth above, the proposing official testified that he "believe[d]" the former chief of police had briefed the deciding official, but this testimony did not indicate that the proposing official had first-hand knowledge of the briefing. HT at 113 (testimony of the proposing official). The appellant has submitted additional evidence and argument

regarding the deciding official's alleged perjury in his reply to the agency's opposition to the petition for review, but we do not consider them because they raise new allegations of error that are outside the scope of the petition for review and the opposition. *See* 5 C.F.R. § 1201.114(a)(4) (providing that a reply to a response to a petition review is limited to the factual and legal issues raised by another party in the response and may not raise new allegations of error). However, a complete copy of the first exhibit attached to the appellant's reply is contained in the record. IAF, Tab 5 at 54-64. This document, as well as others in the record, reflects that the former Camp Parks deputy chief of police reported information regarding the investigation of the appellant via a military police report in August 2012. *Id.* at 51-64. The report is addressed to the commander from the deciding official, and the former chief of police's name appears in the report as the "reporting official," but it does not reflect that the deciding official spoke with the former chief of police at that time. *Id.* at 54, 58. Additionally, the former chief of police was placed on administrative leave on October 3, 2012, RRF, Tab 3 at 23-24, and the deciding official became the director of emergency services of Fort Hunter Liggett, which oversees Camp Parks, on October 26, 2012, IAF, HCD (testimony of the deciding official). Given the record evidence, any witness testimony that the deciding official, in his capacity as director of emergency services, spoke periodically with the former Camp Parks chief of police, is insufficient to show that the administrative judge erred in finding the deciding official credible.

The administrative judge properly found that the appellant did not prove his affirmative defenses of reprisal for participation in union activity and whistleblowing.

¶13    On review, the appellant challenges the administrative judge's finding that he did not prove his affirmative defenses of reprisal for participation in union activity and whistleblowing. RPFR File, Tab 3 at 10-17. In an adverse action appeal in which the appellant raises a prohibited personnel practice affirmative

defense that could independently form the basis of an individual right of action appeal, once the agency proves its adverse action case by preponderant evidence, the appellant must show by preponderant evidence that he made a disclosure protected under 5 U.S.C. § 2302(b)(8) or engaged in protected activity protected under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and that the protected disclosure or activity was a contributing factor in the agency's personnel action. *Alarid*, 122 M.S.P.R. 600, ¶¶ 12-13; *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 19 (2013). If the appellant makes both of these showings by preponderant evidence, the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the appellant's protected activity. 5 U.S.C. § 1221(e)(2); *Alarid*, 122 M.S.P.R. 600, ¶ 14.

¶14    On review, neither party disputes the administrative judge's finding that the appellant proved by preponderant evidence that he participated in union activity protected under 5 U.S.C. § 2302(b)(9)(B), and that this activity was a contributing factor in the decision to remove him because the deciding official became aware of the appellant's union activity when the appellant raised it in his reply to the proposed removal and the deciding official sustained the removal just over 1 month later. RID at 17-20. We discern no reason to disturb the administrative judge's findings.

¶15    The appellant disputes that the agency proved by clear and convincing evidence that it would have removed him absent his protected union activity. In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action absent the protected activity, the Board will consider all of the relevant factors, including the following ("*Carr* factors"): (1) The strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in such protected

activity, but who are otherwise similarly situated. *See Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see also Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).[4] In assessing whether the agency has met its burden by clear and convincing evidence, the Board must consider all the pertinent evidence in the record, and it must not exclude or ignore countervailing evidence by only looking at the evidence that supports the agency's position. *See Herman v. Department of Justice*, 119 M.S.P.R. 642, ¶ 15 (2013) (citing *Whitmore v. Department of Labor*, 680 F.3d 1353, 1367-70 (Fed. Cir. 2012)).

¶16        The appellant challenges the administrative judge's finding that the agency had clear and strong evidence in support of its removal action on the basis that the deciding official committed perjury, which compromises his decision to remove the appellant. RPFR File, Tab 3 at 15. However, as we have discussed above, the record does not support a conclusion that the deciding official was not credible. Moreover, we find that the administrative judge properly assessed the strength of the agency's evidence in the removal action, as he considered the appellant's sworn statement admitting to making at least two police identification cards for an employee who was no longer employed by the agency, the consistency of witness testimony and documentary evidence regarding the procedures for producing such identification cards, and the testimony of at least one disinterested witness and documentary evidence showing that the appellant assisted the former employee in purchasing an unauthorized police badge. RID at 4-12, 21.

---

[4] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on these types of whistleblower issues. However, pursuant to the All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510, appellants may file petitions for judicial review of Board decisions in whistleblower reprisal cases with any circuit court of appeals of competent jurisdiction. *See* 5 U.S.C. § 7703(b)(1)(B). Therefore, we must consider these issues with the view that the appellant may seek review of this decision before any appropriate court of appeal.

¶17     The appellant also challenges the administrative judge's finding that, while there was evidence that the former Camp Parks chief of police and deputy chief of police had a retaliatory motive to remove the appellant because of his union activity, such a motive could not be imputed to the proposing and deciding officials. RPFR File, Tab 3 at 15-17; RID at 21. The appellant contends that witness testimony established that the proposing and deciding officials held anti-union bias, that the deciding official was influenced by his alleged conversations with the former Camp Parks chief of police, and that the deciding official knew or should have known of the union activities at Camp Parks because the post was under his authority. RPFR File, Tab 3 at 15-17.

¶18     In applying the second *Carr* factor, the Board will consider any motive to retaliate on the part of the agency official who ordered the action, as well as any motive to retaliate on the part of other agency officials who influenced the decision. *Herman*, 119 M.S.P.R. 642, ¶ 16; *see Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019-20 (Fed. Cir. 2019) (discussing a professional motive to retaliate when assessing the second *Carr* factor). We agree with the administrative judge that there is little evidence that the deciding official was influenced by the former Camp Parks chief of police, who was placed on administrative leave pending his removal over 1 year before the issuance of the decision in this matter. RID at 21. Given the intervening time period and investigation of the appellant prior to the issuance of the proposal and decision to remove the appellant, as well as the departure of the former Camp Parks deputy chief of police 6 months before the issuance of the proposal and decision, the administrative judge properly concluded that the former Camp Parks officials did not exert influence over the proposing and deciding officials in this matter. *Id.*; IAF, Tab 5 at 20-29, 38-43; HT at 86-89 (testimony of the proposing official). Moreover, there is little evidence that the proposing and deciding officials were aware of the particulars of the appellant's union activity or that they were implicated in his activity. The deciding and proposing officials' testimony

reflected that, due to the organizational structure of the police units, they had little involvement with the Camp Parks collective bargaining unit until the proposing official began his duties as acting chief of police of Camp Parks, which occurred after the appellant began administrative leave. HT at 86-93 (testimony of the proposing official), 115-18, 130-35 (testimony of the deciding official). Thus, we find that the administrative judge properly found that the proposing and deciding officials had little motive to retaliate. *See, e.g.*, *Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 45 (2013) (finding little evidence that the involved official harbored retaliatory motive when the disclosures did not reflect on him and concerned matters that largely predated his arrival at the agency).

¶19        Next, in applying the third *Carr* factor, when the agency fails to introduce relevant comparator evidence, the third *Carr* factor is effectively removed from consideration, although it cannot weigh in favor of the agency. *See Soto*, 2022 MSPB 6, ¶ 18; *see also Rickel v. Department of the Navy*, 31 F.4th 1358, 1365-66 (Fed. Cir. 2022) (holding that the absence of any evidence concerning *Carr* factor three may well cause the agency to fail its case overall, but it will not necessarily do so). The appellant contends that other employees who were union stewards or filed grievances were terminated. RPFR File, Tab 3 at 17. The administrative judge acknowledged this fact but noted that the witness who described the terminations admitted that only one of the terminations "could have been" retaliation, and that there is no evidence that other employees committed similar misconduct to that of the appellant.[5] RID at 21. Our review of the record reflects that the agency did not present any evidence regarding whether it took similar actions against employees who were similarly situated to the appellant but did not participate in union activity. Although the appellant's witnesses testified about the terminations of seven other agency employees, there was insufficient

---

[5] In addition to opining that one employee "could have been" terminated for his union activity, the witness also testified that another employee was unjustly terminated because he was a union steward. HT at 13-17 (testimony of J.H.).

information to conclude that any of the individuals were similarly situated to the appellant.[6] Considering the agency's advantage in accessing this type of evidence, we find that this factor cannot weigh in the agency's favor. We nevertheless are left with the firm belief that the agency would have taken the same action absent the appellant's protected activity based on the strength of the agency's evidence in support of his removal and little evidence of the proposing and deciding officials' motive to retaliate.

¶20 The appellant also argues that the administrative judge's findings concerning his affirmative defense of whistleblower reprisal is erroneous for the reasons he set forth regarding his affirmative defense of reprisal for participation in union activity because the administrative judge applied the same analysis to his allegations of reprisal for whistleblowing. RPFR File, Tab 3 at 17. As set forth above, when an appellant raises whistleblower reprisal as an affirmative defense to an adverse action, he must prove by preponderant evidence that he made a protected disclosure that was a contributing factor in the personnel action taken against him. *Shibuya*, 119 M.S.P.R. 537, ¶¶ 19-20; *see* 5 U.S.C. § 1221(e)(1). To establish that he made a protected disclosure, the appellant must show by preponderant evidence that he disclosed information that he reasonably believed evidenced a violation of a law, rule, or regulation, gross mismanagement, a gross

---

[6] The appellant's witnesses referred to most of the seven employees as police "officer[s]," but the testimony identified two of the employees as police sergeants, rather than police officers. HT at 13-17 (testimony of J.H.). Of the remaining five employees, two were specifically identified as police officers, and both were terminated for misconduct that was not similar to that of the appellant. *Id.* at 13-17 (testimony of J.H.), 46-49 (testimony of M.F.), 69-70 (testimony of E.B.).

The evidence that other employees who participated in union activity were terminated also could show a motive on the part of the proposing or deciding official to retaliate against those who participated in union activity; however, the record does not contain the role of the proposing or deciding official in the terminations or other information that could support a finding of bias against participants in union activity. *See Whitmore*, 680 F.3d at 1369 (determining that it was an abuse of discretion to exclude the testimony of a whistleblower removed from his position to the extent it could show bias against whistleblowers).

waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Shibuya*, 119 M.S.P.R. 537, ¶ 20; *see* 5 U.S.C. § 2308(b)(8)(A). The administrative judge found that the appellant did not identify any protected disclosures; rather, the appellant alleged that he was involved in filing grievances, unfair labor practice (ULP) complaints, EEO complaints, and one complaint to the Office of Inspector General (OIG). RID at 23-25. The administrative judge found that the complaints that the appellant entered into the record, consisting of two ULP complaints and one OIG complaint, could be considered protected disclosures. RID at 23-24; RF, Tab 8 at 16-17, 19, 34-42.[7]

¶21        However, the administrative judge concluded that the appellant did not show that these disclosures were a contributing factor in his removal because the proposing and deciding officials were not aware of the disclosures. RID at 24; HT at 89-90 (testimony of the proposing official), 119 (testimony of the deciding official). A protected disclosure is a contributing factor if it affects an agency's decision to take a personnel action. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). An appellant may demonstrate that a disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing

---

[7] The appellant also provided one 2008 ULP that concerned reprisal for serving as a witness regarding an unfair labor practice charge, but this does not constitute a protected disclosure made by the appellant; rather, it is applicable to his affirmative defense of reprisal for participation in union activity. RF, Tab 8 at 21-22. We also note that the appellant furnished a 2008 letter he submitted to the commanding officer of Camp Parks on behalf of the collective bargaining unit regarding working conditions under the former Camp Parks deputy chief of police, then the chief of police, as well as a 2010 ULP he submitted on behalf of the collective bargaining unit; however, even if these documents could be construed as protected disclosures, the record does not reflect that the proposing or deciding official in this case were aware of these documents. *Id.* at 23, 29-31.

factor in the personnel action. *Id.*; *see* 5 U.S.C. § 1221(e)(1). An appellant may also satisfy the knowledge prong of this knowledge/timing test by proving that the official taking the action had constructive knowledge of the protected disclosure, even if the official lacked actual knowledge. *Nasuti v. Department of State*, 120 M.S.P.R. 588, ¶ 7 (2014). An appellant may establish constructive knowledge by showing that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action. *Id.* The Board has held that if an administrative judge determines that the appellant has failed to satisfy the knowledge/timing test, he must consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the appellant. *Dorney*, 117 M.S.P.R. 480, ¶ 15. Any weight given to a whistleblowing disclosure, either alone or in combination with other factors, can satisfy the contributing factor standard. *Id.*

¶22        On review, the appellant has not disputed the administrative judge's findings that the proposing and deciding officials were not aware of the protected disclosures. The appellant generally alleged on review that the former Camp Parks chief of police and deputy chief of police were aware of his union activity, but as set forth above, the administrative judge did not err in finding that the proposing and deciding officials were not influenced by the former agency officials in this regard, and the appellant has not otherwise alleged on review that the deciding official had constructive knowledge of the disclosures in the two ULP complaints and one OIG complaint at issue. RPFR File, Tab 3 at 15-17. Thus, we find no reason to disturb the administrative judge's finding that, given the proposing and deciding officials' uncontroverted testimony that they were not aware of the appellant's ULP and OIG complaints, the appellant's disclosures were not a contributing factor in the removal action. Accordingly, we affirm the

administrative judge's findings that the appellant did not prove his affirmative defenses.

<u>The administrative judge properly found that the agency proved a nexus between the misconduct and the efficiency of the service and that the penalty was reasonable.</u>

¶23     The appellant argues that the agency did not prove a nexus between the appellant's off-duty misconduct and the efficiency of the service.  RPFR File, Tab 3 at 17-21.  An agency can show a nexus between off-duty misconduct and the efficiency of the service by three means:  (1) a rebuttable presumption in certain egregious circumstances; (2) preponderant evidence that the misconduct adversely affects the appellant's or coworkers' job performance or the agency's trust and confidence in the appellant's job performance; or (3) preponderant evidence that the misconduct interfered with or adversely affected the agency's mission.  *Kruger v. Department of Justice*, 32 M.S.P.R. 71, 74 (1987).  Here, the administrative judge found that the adverse effect on the efficiency of the service was readily apparent, as the appellant was charged with the enforcement of Federal criminal laws such as the ones that he had violated.  RID at 25.  The record reflects that the appellant was a police officer, charged with upholding the law and protecting Government property, yet he aided a former employee in obtaining unauthorized police identification and badges, which constituted violations of Federal law and a potential safety risk.  IAF, Tab 5 at 26-27.  The deciding official observed that the appellant's poor judgment caused him to lose confidence that the appellant could be trusted to perform his duties in accordance with the agency's rules, regulations, and standards of conduct.  *Id.* at 27.  Thus, we find that the agency established that the appellant's misconduct adversely affected the agency's trust and confidence in his performance and proved by preponderant evidence that his misconduct adversely affected the efficiency of the service.

¶24 Finally, we are also unpersuaded by the appellant's arguments that the agency did not prove that the penalty of removal was reasonable. When, as here, the agency's charges are sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Adam v. U.S. Postal Service*, 96 M.S.P.R. 492, ¶ 5 (2004), *aff'd*, 137 F. App'x 352 (Fed. Cir. 2005). The Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty clearly exceeded the bounds of reasonableness. *Id.* The appellant appears to allege that the penalty of removal was unreasonable because he had above-average performance evaluations, no prior discipline, and 8 years of service; and his misconduct was not notorious. RPFR File, Tab 3 at 19-20. The record reflects, however, that the deciding official considered these factors, among others, but found that the appellant's misconduct was egregious in light of his role as a police officer and seriously compromised his credibility and reliability to perform his duties, and that an alternative penalty would be detrimental to the organization. IAF, Tab 5 at 26-28. Therefore, the administrative judge properly concluded that the deciding official considered all relevant factors in his decision and that removal was the maximum reasonable penalty.

¶25 Accordingly, the administrative judge's remand initial decision is affirmed.

## NOTICE OF APPEAL RIGHTS[8]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at

http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case,

and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

> Office of Federal Operations
> Equal Employment Opportunity Commission
> P.O. Box 77960
> Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

> Office of Federal Operations
> Equal Employment Opportunity Commission
> 131 M Street, N.E.
> Suite 5SW12G
> Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9] The court of appeals must receive your petition for

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.

review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                                    /s/ for

                                                  Jennifer Everling
                                                  Acting Clerk of the Board

Washington, D.C.